# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEVIN BAX,<br>    Plaintiff | : | |
| | : | No. 1:20-cv-222 |
| v. | : | |
| | : | (Judge Rambo) |
| MATTHEW DWAYNE CLARK,<br>    Defendant | : | |

## **MEMORANDUM**

This matter is before the Court pursuant to the motion to quash (Doc. No. 60) filed by the Pennsylvania Department of Corrections ("DOC"), as well as Plaintiff Tevin Bax ("Plaintiff")'s cross-motion to compel compliance with subpoenas (Doc. No. 64). The motions are fully briefed and ripe for disposition.

## I. BACKGROUND

On February 7, 2020, Plaintiff, then proceeding *pro se*, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants C.O. Clark ("Clark") and Superintendent Mark Garman ("Garman"). (Doc. No. 1.) Plaintiff alleges that during a previous period of incarceration at SCI Rockview, he was placed in a restraint chair and Defendant Clark kicked him in the face. (*Id.*) On February 24, 2020, Plaintiff filed an amended complaint raising the same claim against Defendants Clark and Garman. (Doc. No. 8.)

In an Order dated March 3, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis*, dismissed Defendant Garman, and directed the Clerk of Court to effect service of the amended complaint upon Defendant Clark. (Doc. No. 16.) More than thirty (30) days passed, and Defendant Clark did not return a waiver of service. Accordingly, in an Order dated April 6, 2020, the Court directed the Clerk of Court to issue a summons so that the United States Marshal could effect service of the amended complaint on Defendant Clark. (Doc. No. 21.) On June 8, 2020, the summons was returned as executed. (Doc. No. 22.) The summons indicated that it was served upon Ken Brubaker in SCI Rockview's Superintendent's Office. (*Id.*)

In an Order dated June 19, 2020, the Court indicated that it had "recently learned that Defendant Clark was criminally charged because of the incident alleged in Plaintiff's amended complaint." (Doc. No. 24.) The Court, therefore, noted that it could not "conclusively discern that Defendant Clark has received notice of the above-captioned case." (*Id.*) The Court ordered Plaintiff to provide Defendant Clark's first name, for purposes of service, within fourteen (14) days. (*Id.*) On June 29, 2020, Plaintiff responded to the Court's Order and indicated that Defendant Clark's full name is Matthew Dwayne Clark. (Doc. No. 25.) Public records indicate that Defendant Clarke is currently facing charges of simple assault, official oppression, and harassment in the Court of Common Pleas for Centre County,

Pennsylvania. *See Commonwealth v. Clark*, Docket No. CP-14-CR-0000489-2020 (Centre Cty. C.C.P.).

In an Order dated June 30, 2020, the Court requested that the Department of Corrections' Office of Chief Counsel provide, under seal, any information they may have concerning Defendant Clark's last known address. (Doc. No. 26.) On July 10, 2020, the Office of Chief Counsel provided such information under seal. (Doc. No. 27.) In an Order dated July 13, 2020, the Court directed the Clerk of Court to issue a summons so that the United States Marshal could attempt to serve Defendant Clark at the address provided by the Office of Chief Counsel. (Doc. No. 28.) The summons was returned as executed on September 28, 2020. (Doc. No. 37.) The executed summons indicated that it was served upon Defendant Clark's mother on September 24, 2020. (*Id.*) Defendant Clark's mother indicated that Defendant Clark did not live there but that she would give the summons to him. (*Id.*) Given this, despite the execution of the summons, the Court could not conclusively discern that Defendant Clark had received notice of the above-captioned case.

In an Order dated October 26, 2020, the Court referred the above-captioned action to the Chair of the Federal Bar Association's Pro Bono Committee for purposes of locating counsel to represent Plaintiff in this matter. (Doc. No. 39.) Counsel subsequently appeared on behalf of Plaintiff. (Doc. Nos. 48, 50.) Following a telephone conference, the Court stayed all applicable case management

deadlines and extended the time period for effecting service upon Defendant Clark by sixty (60) days. (Doc. No. 54.) Defendant Clark subsequently filed a waiver of service, and his answer or response to the amended complaint was due on or before May 17, 2021. (Doc. No. 55.) On May 21, 2021, Plaintiff requested that the Clerk enter default against Defendant Clark because of his failure to respond to the amended complaint. (Doc. No. 57.) Clerk's default was entered on May 24, 2021. (Doc. No. 58.)

Meanwhile, on May 13, 2021, Plaintiff directed a third-party subpoena to SCI Rockview.[1] (Doc. Nos. 60 at 1; 65 at 1.) The subpoena sought the following information: (1) Plaintiff's entire inmate file; (2) Plaintiff's entire psychological file; (3) Plaintiff's entire medical file; (4) Plaintiff's entire intake file; (5) all documents regarding Defendant Clark's "assault or alleged assault of [Plaintiff] on or about October 30, 2019"; (6) all documents relating to Defendant Clark's employment as a corrections officer, including his entire personnel file; and (7) all documents relating "to any other alleged assaults on inmates committed by [Defendant] Clark." (Doc. No. 64-2 at 6-7.) The subpoena requested that the information sought be provided by May 27, 2021. (Doc. No. 60 at 1.) After

---

[1] Plaintiff indicates that counsel also directed a third-party subpoena to SCI Benner Township on May 13, 2021. (Doc. No. 65 at 1.) The DOC represents that counsel "confirmed with the SCI-Benner Corrections Superintendent's Assistant that the institution has not received a subpoena in this matter." (Doc. No. 67 at 1 n.2.) Plaintiff, however, has submitted copies of the certified mail return receipts which indicate that the same individual signed for both subpoenas. (Doc. No. 70-2 at 1.)

4

receiving the subpoena, the Superintendent's Assistant at SCI Rockview forwarded it to the DOC's Office of Chief Counsel on May 20, 2021. (Doc. No. 60 at 1.)

Counsel for the DOC spoke to Plaintiff's counsel about the subpoena on May 24, 2021. (*Id.* at 2.) Counsel expressed her concerns about the subpoena—"namely, the need for a confidentiality agreement with respect to items such as the DOC's videos and investigative documents, as well as the institution's inability to fulfill the request in the timeframe suggested." (*Id.*) Counsel also suggested that it "may behoove Plaintiff's counsel to specify which records he is seeking within the Plaintiff's inmate's file" because of "the requirement for Plaintiff to cover the expenses associated with the DOC's production of the requested documents." (*Id.*) Plaintiff's counsel expressed his belief that "Plaintiff is not responsible for fees associated with producing records pursuant to the subpoena." (*Id.*)

During the phone call, Plaintiff's counsel indicated that they were unable to modify the subpoena to eliminate certain categories of information from Plaintiff's inmate file because they were "unaware of what categories of information comprise the inmate file." (Doc. No. 65 at 2.) Plaintiff's counsel also suggested that counsel for the DOC "prepare a privilege log-like document which would explain exactly what items would be withheld from production based on the need for a confidentiality agreement." (*Id.* at 3.) Plaintiff's counsel also noted that Defendant Clark had already been notified of the subpoena and had not raised any objections.

5

(*Id.* at 4.) After the phone call, counsel for the DOC followed up with an email to Plaintiff's counsel. (Doc. No. 60 at 2.) Counsel reiterated her concerns about "the need for a confidentiality agreement, the need for Plaintiff to pay the costs associated with the provision of the requested materials, and the DOC's inability to comply with this request in the limited time suggested by Plaintiff." (*Id.* at 3.) Counsel for the DOC also indicated that "Plaintiff's counsel had the opportunity to provide a release for the requested medical records." (*Id.*) Subsequently, the parties filed the pending motion to quash and motion to compel.

## II. LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure sets forth the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. A subpoena issued pursuant to Rule 45 "must fall within the scope of proper discovery under" Rule 26(b)(1) of the Federal Rules. *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. 08-2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008). Rule 26(b)(1) provides that a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Consequently, courts often—and appropriately—liberally apply discovery rules. *See, e.g.*, *Clements v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citing *Great W. Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994)).

6

A non-party can request that a court quash a subpoena issued pursuant to Rule 45(d)(3). *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014). "The party seeking to quash the subpoena bears the heavy burden of demonstrating that the requirements of Rule 45 are satisfied." *CedarCrestone, Inc. v. Affiliated Computer Servs. LLC*, No. 14-mc-298, 2014 WL 3055355, at *3 (M.D. Pa. July 3, 2014) (citations omitted). A court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits [100 miles] specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A).

## III. DISCUSSION

The DOC first agrees that the subpoena fails to provide a reasonable time in which to comply. The Court agrees. As noted *supra*, the subpoena was received at SCI Rockview on May 20, 2021 and requested that all responsive documents be produced by May 27, 2021. Plaintiff asserts that counsel was agreeable to the need for more time and represented such in communications with counsel for the DOC. (Doc. No. 65 at 6.) Nevertheless, as originally written, the subpoena simply does not provide a reasonable time for the DOC to comply. As the DOC notes, with respect to the request for Defendant Clark's personnel records, the DOC's Office of Chief Counsel is required to notify the Office of Administration ("OA") regarding

7

the request. (Doc. No. 61 at 5.) OA must then notify Defendant Clark and allow him the opportunity to object. (*Id.* at 5-6.) Thus, additional time is needed to comply with this request alone. (*Id.* at 6.)

The DOC also submits that Plaintiff's request for his entire inmate file is "extremely broad" and that the subpoena, as currently drafted, "would require the DOC to produce all of Plaintiff's inmate files, regardless of whether these records are relevant or proportional to the needs of the case." (Doc. No. 67 at 5.) The DOC further represents that Plaintiff has requested 'investigative reports and videos, as well as certain other documents," that are not public and, therefore, require the execution of a confidentiality agreement prior to providing those items. (*Id.*) The DOC also states that all potentially responsive records "must be reviewed, redacted, and assessed for inclusion in a confidentiality agreement." (*Id.*)

In response, Plaintiff asserts that counsel "was agreeable to discussing the possibility of a confidentiality agreement once they are made aware of what exact items within the file require the agreement and why." (Doc. No. 65 at 7.) Plaintiff also asserts that counsel could not "know what portions of the inmate file are relevant without knowing what categories of information comprise it." (*Id.* at 7-8.) The DOC counters Plaintiff's argument by noting that "[c]ounsel is free to consult the DOC's policy, DC-ADM 003, which is available on its public website, and which lists the categories of information retained by the DOC." (Doc. No. 67 at 6.) In his reply

brief, however, Plaintiff indicates that since the filing of the DOC's latest brief, he has received from the Centre County District Attorney's Office "investigative reports concerning Clark's assault of [Plaintiff], the video recording Clark assaulting [Plaintiff], and records documenting [Plaintiff's] injuries from the assault. (Doc. No. 70 at 2.) Because of this, Plaintiff states that he is now just seeking his entire psychological file and Defendant Clark's entire personnel file, including any documents relating to other alleged assaults committed by him, from the DOC. (*Id.* at 2-3.)

The Court agrees with the DOC that the subpoena, as initially written, subjected the DOC to an undue burden because it required all of Plaintiff's inmate files to be produced, regardless of whether the records contained therein are relevant to the needs of the above-captioned action. Moreover, given the vast scope of the subpoena, the DOC would be burdened with reviewing all documents for possible inclusion in a confidentiality agreement. However, in light of Plaintiff's representations that he is now limiting the subpoena to seek his entire psychological file as well as Defendant Clark's entire personnel file, including documents relating to any other alleged assaults committed by him, the Court concludes that the subpoena, as modified, does not subject the DOC to an undue burden. The Court, therefore, will direct that the DOC produce these items to Plaintiff, subject to any confidentiality agreement that the parties may find it necessary to enter into.

9

Finally, counsel for the DOC challenges Plaintiff's stance that he "is not required to pay the costs associated with obtaining records pursuant to the subpoena." (Doc. No. 61 at 9.) In response, Plaintiff argues that Rule 45 does "not state that an *in forma pauperis* prisoner is required to pay the DOC for document it is required to produce pursuant to a lawful subpoena." (Doc. No. 65 at 9.) Plaintiff argues that counsel made a good faith attempt to comply with Rule 45(d)(1) by "requesting that the DOC scan and email the responsive documents, as opposed to copying and mailing them." (*Id.*)

Plaintiff, "as the moving party, remains responsible for the costs for the service and compliance with the subpoena[]. A nonparty shall not suffer the financial burden of compliance with a subpoena *duces tecum*." *Manning v. Herman*, No. 1:13-cv-1426, 2016 WL 6135626, at *2 (M.D. Pa. Oct. 21, 2016) (citing *Badman v. Stark*, 139 F.R.D. 601, 605 (M.D. Pa. 1991)). DOC policy DC-ADM 003, which concerns the release of information, indicates that copying fees will be assessed based on the type of information requested. (Doc. No. 67-1.) For "records maintained on microfiche, photographic records, or other non-paper records, a fee equal to the actual cost of reproducing records" will be assessed. (*Id.*) Moreover, fees for reproducing medical records "shall apply for paper copies or reproductions on electronic media whether the records are stored on paper or in electronic format." (*Id.*) Moreover, contrary to Plaintiff's argument, the "granting of IFP status exempts

litigants from filing fees only. It does not exempt litigants from the costs of copying and filing documents; service of documents other than the complaint; costs; expert witness fees; or sanctions." *Porter v. Dep't of Treasury*, 564 F.3d 176, 180 n.3 (3d Cir. 2009) (internal citations omitted); *see also Augustin v. New Century TRS Holding, Inc.*, No. 08-326, 2008 WL 5114268, at *3 (W.D. Pa. Nov. 25, 2008) (noting, *inter alia*, that 28 U.S.C. § 1915 does not authorize payment of litigation expenses). Plaintiff, therefore, is not exempt from paying the costs incurred by the DOC in complying with the subpoena *duces tecum*.

In sum, the Court concludes that the subpoena, as modified by Plaintiff, should not be quashed, and the DOC will be directed to provide copies of Plaintiff's psychological file and Defendant Clark's personnel file, including any documents regarding any other alleged assaults committed by him, to counsel for Plaintiff, subject to any confidentiality agreement that the parties may find it necessary to enter into. The DOC will be directed to provide such information within sixty (60) days of the date of this Order. Plaintiff, however, will be required to pay the costs incurred by the DOC in complying with the subpoena *duces tecum*.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the DOC's motion to quash (Doc. No. 60) and grant Plaintiff's cross-motion to compel compliance (Doc. No. 64). The DOC will be directed to provide copies of Plaintiff's psychological file and

11

Defendant Clark's personnel file, including any documents regarding any other alleged assaults committed by him, to counsel for Plaintiff, subject to any confidentiality agreement that the parties may find it necessary to enter into. The DOC will be directed to provide such information within sixty (60) days of the date of this Order. Plaintiff, however, will be required to pay the costs incurred by the DOC in complying with the subpoena *duces tecum*. An appropriate Order follows.

                                                s/ Sylvia H. Rambo
                                                United States District Judge

Dated: June 24, 2021