**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TEVIN BAX, | : | |
|     **Plaintiff** | : | |
| | : | **No. 1:20-cv-222** |
|     v. | : | |
| | : | **(Judge Rambo)** |
| MATTHEW DWAYNE | : | |
| CLARK, *et al.*, | : | |
|     **Defendants** | : | |

**<u>MEMORANDUM</u>**

This matter is before the Court pursuant to the partial motion to dismiss (Doc. No. 84) filed by Defendants Craig Rutherford ("Rutherford") and the Pennsylvania Department of Corrections ("DOC"). The motion is fully briefed and ripe for disposition.[1]

## I.    BACKGROUND

### A.    Procedural History

On February 7, 2020, Plaintiff Tevin Bax ("Plaintiff"), then proceeding *pro se*, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants C.O. Clark ("Clark") and Superintendent Mark Garman

---

[1] While Defendants have not filed a reply brief, the Court notes that it is "under no obligation to refrain from considering [the] motion until [Defendants] file a reply brief." *King v. Mansfield Univ. of Pa.*, No. 1:11-cv-1112, 2025 WL 871693, at *3 (M.D. Pa. Feb. 27, 2015). The Local Rules of this Court make clear that the Court has unlimited authority to decide a motion before the expiration of the typical briefing schedule. *See* M.D. Pa. L.R. 7.6. The Court finds that the issues have been adequately briefed such that any reply by Defendants "would [not] have any material impact" on the Court's decision. *See Witasick v. Minn. Mut. Life Ins. Co.*, No. 12-3474, 2015 WL 758316, at *1 n.3 (D.N.J. Feb. 23, 2015).

("Garman"). (Doc. No. 1.) On February 24, 2020, Plaintiff filed an amended complaint. (Doc. No. 8.) In an Order dated March 3, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis*, dismissed Defendant Garman, and directed the Clerk of Court to effect service of the amended complaint upon Defendant Clark. (Doc. No. 16.) More than thirty (30) days passed, and Defendant Clark did not return a waiver of service. Accordingly, in an Order dated April 6, 2020, the Court directed the Clerk of Court to issue a summons so that the United States Marshal could effect service of the amended complaint on Defendant Clark. (Doc. No. 21.) On June 8, 2020, the summons was returned as executed. (Doc. No. 22.) The summons indicated that it was served upon Ken Brubaker in SCI Rockview's Superintendent's Office. (*Id.*)

In an Order dated June 19, 2020, the Court indicated that it had "recently learned that Defendant Clark was criminally charged because of the incident alleged in Plaintiff's amended complaint."[2] (Doc. No. 24.) The Court, therefore, noted that it could not "conclusively discern that Defendant Clark has received notice of the above-captioned case." (*Id.*) The Court ordered Plaintiff to provide Defendant Clark's first name, for purposes of service, within fourteen (14) days. (*Id.*) On June

---

[2] Public records reflect that on May 19, 2021, Defendant Clark pled *nolo contendere* to simple assault and was sentenced to two (2) years of probation. *See Commonwealth v. Clark*, Docket No. CP-14-CR-0000489-2020 (Centre Cty. C.C.P.).

2

29, 2020, Plaintiff responded to the Court's Order and indicated that Defendant Clark's full name is Matthew Dwayne Clark. (Doc. No. 25.)

In an Order dated June 30, 2020, the Court requested that the DOC's Office of Chief Counsel provide, under seal, any information they may have concerning Defendant Clark's last known address. (Doc. No. 26.) On July 10, 2020, the Office of Chief Counsel provided such information under seal. (Doc. No. 27.) In an Order dated July 13, 2020, the Court directed the Clerk of Court to issue a summons so that the United States Marshal could attempt to serve Defendant Clark at the address provided by the Office of Chief Counsel. (Doc. No. 28.) The summons was returned as executed on September 28, 2020. (Doc. No. 37.) The executed summons indicated that it was served upon Defendant Clark's mother on September 24, 2020. (*Id.*) Defendant Clark's mother indicated that Defendant Clark did not live there but that she would give the summons to him. (*Id.*) Given this, despite the execution of the summons, the Court could not conclusively discern that Defendant Clark had received notice of the above-captioned case.

In an Order dated October 26, 2020, the Court referred the above-captioned action to the Chair of the Federal Bar Association's Pro Bono Committee for purposes of locating counsel to represent Plaintiff in this matter. (Doc. No. 39.) Counsel subsequently appeared on behalf of Plaintiff. (Doc. Nos. 48, 50.)

Following a telephone conference, the Court stayed all applicable case management deadlines and extended the time period for effecting service upon Defendant Clark by sixty (60) days. (Doc. No. 54.) Defendant Clark subsequently filed a waiver of service, and his answer or response to the amended complaint was due on or before May 17, 2021. (Doc. No. 55.) On May 21, 2021, Plaintiff requested that the Clerk enter default against Defendant Clark because of his failure to respond to the amended complaint. (Doc. No. 57.) Clerk's default was entered on May 24, 2021. (Doc. No. 58.) On September 20, 2021, Plaintiff, through counsel, filed a motion for leave to file a second amended complaint. (Doc. No. 75.) The Court granted the motion that same day. (Doc. No. 76.) Accordingly, the above-captioned action is proceeding on the second amended complaint against Defendants Clark, Rutherford, and the DOC. (Doc. No. 77.)

### B.   Summary of the Second Amended Complaint

The DOC has records of Plaintiff being "seriously mentally ill." (Doc. No. 77 ¶ 9.) On October 30, 2019, Plaintiff felt suicidal, which "resulted in the initiation of a transfer from the Diversionary Treatment Unit [("DTU")] to a psychiatric observation cell." (*Id.* ¶ 10.) Defendant Rutherford was the supervisor in charge of the transfer, and he assigned Defendant Clark as the escorting officer. (*Id.* ¶ 12.) During the transfer, Plaintiff "was handcuffed and restricted by [D]efendant Clark

4

on his left side.   Defendant Rutherford followed closely behind to the right of
[Plaintiff]."   (*Id.* ¶ 13)   Although Plaintiff and Defendant Clark had a "verbal
altercation at the very beginning of the transfer," Defendant Rutherford "chose not
to remove [D]efendant Clark from the scene."   (*Id.* ¶ 14.)   Instead, Defendant
Rutherford told Plaintiff, "My advice to you is to keep your mouth shut."   (*Id.* ¶ 16.)

As Plaintiff approached the inner grill door, Defendant Clark slammed him
face first into the door.   (*Id.* ¶ 17.)   "Defendant Rutherford watched this assault and
made no comment."   (*Id.* ¶ 18.)   As Plaintiff approached the second door, Defendant
Clark again slammed him face first into the door.   (*Id.* ¶ 20.)   Defendant Rutherford
watched and did not intervene.   (*Id.* ¶ 21.)   Plaintiff stated: "Your boy . . . slammed
my face into there [the doors] twice!"   (*Id.* ¶ 22.)   Defendant Rutherford responded,
"My boy didn't . . . .   Nobody did anything to you."   (*Id.*)

Defendant Rutherford directed staff to strap Plaintiff into a restraint chair.   (*Id.*
¶ 25.)   As Plaintiff was being strapped into the chair, Defendant Clark "placed his
hand on [Plaintiff's] throat and told him "Do it" in an attempt to goad [him] into
spitting on the officers restraining him."   (*Id.* ¶ 26.)   Staff, including Defendant
Rutherford and Officers Matthew Bower, Jared Curtis, and William Miller, then held
Plaintiff's "head down with his stomach flush against his legs for approximately four
minutes and fifty-six seconds, a method of physical restraint known to be capable of

causing positional asphyxia—death as a result of a body position which interferes with a person's ability to breathe." (*Id.* ¶ 29.)  During this time, Defendant Clark "repeatedly goaded [Plaintiff] to "Do it . . . . Do it you f***ing p****." (*Id.* ¶ 30.) Defendant Rutherford took no action to reprimand Defendant Clark or otherwise intervene. (*Id.* ¶ 32.)

While Plaintiff was strapped in the restraint chair with his head down, Defendant Clark kicked him in the face.  (*Id.* ¶ 34.)  Only then did Defendant Rutherford remove Defendant Clark from the scene. (*Id.* ¶ 35.)  Despite admitting to a DOC Criminal Investigator that he witnessed Defendant Clark kick Plaintiff in the face, Defendant Rutherford, "on video, denied to [Plaintiff] that the assault occurred." (*Id.* ¶ 36.)  Plaintiff exclaimed, "You just let your officer kick me in the face?!" (*Id.* ¶ 37.)  Defendant Rutherford denied the assault and said that he saw Plaintiff spit on Officer Bower's pants leg. (*Id.* ¶¶ 38-39.)  Plaintiff asked, "How do you explain that my forehead is randomly bleeding?" (*Id.* ¶ 40.)  Defendant Rutherford "suggested that perhaps [Plaintiff] had suffered an 'injury beforehand' or had a 'pimple.'" (*Id.*)  Officer Bower also denied seeing the assault, and Defendant Clark and Officer Bower "then attempted to cover up the assault of [Plaintiff] by falsely charging him with assault." (*Id.* ¶¶ 41-42.)

Based on the foregoing, Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated.  (*Id.* ¶¶ 44-86.)  He also asserts violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").  (*Id.* ¶¶ 87-114.)  As relief, Plaintiff requests damages, including punitive damages, attorneys' fees, and costs.  (*Id.* at 20.)

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading."  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).   A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice,

matters of public record, orders, [and] items appearing in the record of the case.'"

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed.

2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.

2002) (noting that when considering a motion to dismiss, courts may consider

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading").

**B.    Civil Rights Statute, 42 U.S.C. § 1983**

Section 1983 is the vehicle by which private citizens may seek redress for

violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C.

§ 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights, but merely a method to

vindicate violations of federal law committed by state actors."  *See Gonzaga Univ.*

*v. Doe*, 536 U.S. 273, 284-85 (2002).  To state a cause of action under Section 1983,

a plaintiff must allege that: (1) the conduct complained of was committed by persons

9

acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.  DISCUSSION

As noted *supra*, Plaintiff asserts ADA and RA claims against the DOC. Plaintiff avers that he was entitled to reasonable accommodations because of his status as a suicidal inmate and that Defendants Clark and Rutherford failed to reasonably accommodate his disability during the transfer to the psychiatric observation cell.  (Doc. No. 1.)  The DOC seeks dismissal of Plaintiff's ADA and RA claims for failure to state a claim upon which relief may be granted.  (Doc. No. 85.)

To establish a violation of Title II of the ADA, a plaintiff must allege that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (citing 42 U.S.C. § 12132.)  Title II applies to inmates in state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting

42 U.S.C. §§ 12141 and 12132).  The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  *See* 29 U.S.C. § 794(a).  "The ADA and the [RA] have the same standard for liability and are to be interpreted consistently."  *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 166-67 (3d Cir. 2015).  Moreover, a plaintiff may assert a claim for violations of the ADA and RA based on a failure to accommodate.  *See Muhammad v. Ct. of Common Pleas*, 483 F. App'x 759, 763 (3d Cir. 2012).  To set forth such a claim, a plaintiff must allege that "but for the failure to accommodate, he would not be deprived of the benefit he seeks."  *See id.* at 764.

The DOC concedes that Plaintiff satisfies the first element of an ADA and RA claim because records designate him as "seriously mentally ill."  (Doc. No. 85 at 5.) The DOC, however, disputes that Plaintiff "was denied the benefits of any services or programs or was otherwise discriminated against by the DOC because of his disability."  (*Id.*)  The DOC avers that Plaintiff's status as a DTU inmate "severely undermines any claim that he was treated in the same manner as other inmates without a disability, or that the DOC otherwise failed to account for his disability when housing or transferring him."  (*Id.* at 7.)

11

As noted *supra*, Plaintiff seeks compensatory and punitive damages. (Doc. No. 77 at 20.) Punitive damages, however, are not available under Title II of the ADA and section 504 of the RA. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 429 (3d Cir. 2003) (citing *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)). To receive compensatory damages, Plaintiff must demonstrate "intentional discrimination under a deliberate indifference standard." *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). Thus, Plaintiff must allege that the DOC "(1) had 'knowledge that a federally protected right is substantially likely to be violated,' and (2) failed 'to act despite that knowledge.'" *Snider v. Pa. DOC*, 505 F. Supp. 3d 360, 397 (M.D. Pa. 2020) (quoting *Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263, 274 (3d Cir. 2020)). Plaintiff can show that such a right "was 'substantially likely to be violated' by either (1) alleging 'a failure to adequately respond to a pattern of past occurrences of injuries like [his]"; or (2) alleging facts that 'prove that the risk of . . . cognizable harm was so great and so obvious that the risk and the failure . . . to respond will alone support finding deliberate indifference.'" *Matthews v. Pa. Dep't of Corr.*, 827 F. App'x 184, 187 (3d Cir. 2020) (quoting *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)).

The DOC asserts that "it may not reasonably be said that decisions regarding [Plaintiff's] housing status, and the measures employed during his escort to a POC,

equate to discrimination by the DOC on the basis of his mental illness or suicidal state." (Doc. No. 85 at 8.)  The DOC avers that Plaintiff "was subject to the same security measures outlined in policy—including the manner in which transports/escorts are conducted—as the other mentally ill inmates on that block that have been deemed to pose a security risk." (*Id.*)  The DOC argues that it is apparent that it was cognizant of Plaintiff's "mental health needs and took steps to ensure he was housed appropriately, as evidenced by the fact that he was housed on the DTU and subsequently promptly escorted him to the POC when the need arose." (*Id.* at 13.)

The Court agrees with Plaintiff that the DOC has misread his claim, as nowhere in the second amended complaint does Plaintiff challenge his housing status in the DTU or the decision to transfer him to a psychiatric observation cell. (Doc. No. 86 at 4.)  Rather, Plaintiff avers that the DOC failed to accommodate his disability during the transfer from the DTU to the psychiatric observation cell.  In his brief in opposition, Plaintiff relies upon the Middle District of Florida's decision in *Walton for Estate of Smith v. Fla. Dep't of Corr.*, No. 3:16-cv-1130-J-39JRK, 2019 WL 2103024 (M.D. Fla. May 14, 2019).  In that matter, the estate of a deceased inmate brought suit against, *inter alia*, the Florida DOC for violations of Title II of the ADA.  *Id.* at *10.  The estate alleged that the FDOC had failed to accommodate

13

the deceased inmate's mental health disability by punishing him when he could not understand or follow commands, refusing to train employees regarding the safe management of mentally ill inmates, refusing to consider his disability when moving and escorting him, allowing "sadistic officers to bait and abuse" him, and failing to use alternatives to force to manage him. *Id.* at *11. The Middle District of Florida concluded that the estate had stated a claim under the ADA because these allegations "permit[ted] the reasonable inference that the alleged discriminatory conduct against [the deceased inmate] was because of his disability." *Id.* at *12.

In the instant case, Plaintiff makes allegations similar to those at issue in *Walton*. As noted *supra*, Plaintiff avers that during the transfer, Defendant Clark slammed his head into two separate doors, placed his hand on Plaintiff's throat and attempted to goad him into spitting on the officers, and kicked him the face while he was in the restraint chair. (Doc. No. 77.) Plaintiff alleges further that Defendant Rutherford and other officers held him head down with his stomach flush against his legs for five (5) minutes in a manner of restraint known to "be capable of causing positional asphyxia—death as a result of a body position which interferes with a person's ability to breathe." (*Id.* ¶ 29.) Plaintiff further avers that at no time did Defendant Rutherford act to remove Defendant Clark from the scene or intervene to prevent the assaults, and that he denied that the assaults occurred. Like the plaintiff

in *Walton*, Plaintiff here "alleges the [DOC] failed to accommodate [his] mental disability such that he was at a heightened risk of harm, resulting in injury." *Walton*, 2019 WL 2103024, at *11.

The DOC argues further that, even assuming that Plaintiff "was entitled to reasonable accommodations, the proposed accommodations are nebulous, unreasonable, and impractical in a prison setting." (Doc. No. 85 at 10.)  They assert that "it is unreasonable to suggest that corrections officers should be required to respect an inmate's 'comfort zone' during an escort through the institution," and that Plaintiff's other requests "do not constitute reasonable additional accommodations that would form the basis for an ADA claim." (*Id.* at 10, 12.)  This, however, is not fatal to Plaintiff's ADA and RA claims because his second amended complaint "need only set forth sufficient facts to support plausible claims." *Fowler*, 578 F.3d at 211-12.  As long as a complaint "pleads how, when, and where [the DOC] allegedly discriminated against [Plaintiff]," this is "sufficient to give [the DOC] notice of the basis for [Plaintiff's] claim." *Id.* at 212.  Moreover, Plaintiff must allege only material facts that, "in addition to inferences drawn from those factual allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998).  Plaintiff has done so in his second amended complaint, and his allegations "permit the reasonable inference that the alleged

15

discriminatory conduct against [him] was because of his disability." *Walton*, 2019 WL 2103024, at *12.  At this time, the Court will not foreclose Plaintiff's ADA and RA claims "without the benefit of a factually developed record." *Id.*

## IV.   CONCLUSION

For the foregoing reasons, the partial motion to dismiss (Doc. No. 84) will be denied.  An appropriate Order follows.


<u>s/ Sylvia H. Rambo</u>
United States District Judge

Date: December 7, 2021